UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
MELVIN CURTIS,

      Plaintiff,          **REPORT & RECOMMENDATION**

 -against-              10 CV 1031 (DLI)

CAMERON LINDSAY, K. WHITE,

      Defendants.
----------------------------------------------------X

Plaintiff Melvin Curtis, proceeding pro se, filed this action on March 3, 2010, against Cameron Lindsay, Warden of the Metropolitan Detention Center ("MDC"), and an unnamed correctional officer, later identified as "K. White."[1] Plaintiff alleges that on or about October 27, 2007, "due to [the] deliberate indifference of defendent [*sic*] [correctional officer] the plaintiff was assaulted" when the defendant correctional officer left his post without authorization from his superiors. (Compl.[2] at 4).

On July 26, 2010, defendant Lindsay moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that: 1) under 42 U.S.C. § 1983 and Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), plaintiff may not pursue liability against defendant Lindsay under a theory of "supervisory liability;" and 2) plaintiff failed to allege sufficient acts to support a claim that defendant Lindsay had the requisite mindset in connection with the alleged constitutional violations. On March 2, 2011, this Court issued a Report and Recommendation, recommending that plaintiff's Complaint against defendant

---

[1] Although plaintiff initially alleged claims against "John Doe" as the unidentified correctional officer, on August 4, 2010, plaintiff determined that Officer K. White was the officer allegedly on duty that night and so the caption of the case was amended to substitute Officer K. White for the John Doe defendant.

[2] Citations to "Compl." refer to the Complaint, filed on March 3, 2010.

Lindsay be dismissed.

While defendant's motion was pending, but five months after plaintiff's time to respond to the motion had expired, plaintiff submitted a motion on February 22, 2011, seeking to amend the Complaint, accompanied by a proposed Amended Complaint ("Amended Complaint").[3] The Court thereafter withdrew its Report and Recommendation to allow briefing on the Motion to Amend. Defendants do not oppose the proposed Amended Complaint insofar as it seeks to add additional factual allegations regarding the conduct of defendant White. However, defendants do oppose plaintiff's motion to add new defendants not previously named and renew their motion to dismiss all claims against defendant Lindsay, contending that even with the new allegations, the Amended Complaint still fails to state a claim against defendant Lindsay under Bivens.

The Court now considers both defendant's Motion to Dismiss and plaintiff's Motion to Amend. After reviewing the parties' papers, the Court respectfully recommends that defendant Lindsay's Motion to Dismiss be granted, and plaintiff's Motion to Amend be granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Initial Complaint

Plaintiff Melvin Curtis is currently an inmate at the United States Penitentiary in Atwater, California. Plaintiff alleges that on or about October 27, 2007, he was "assigned to and resided in unit B-31-3 North with several inmates plaintiff had altercation[s] with on several occasion[s]" prior to that date. (Compl. at 4; Am. Compl.[4] 3A). Plaintiff alleges that on October

---

[3]On January 10, 2011, the district judge noted that plaintiff had still not responded to the pending motion to dismiss, and gave him until February 10, 2011, to respond. On January 31, 2011, plaintiff requested a 30-day extension of the time to respond to the motion. The court denied the motion, but gave plaintiff an additional two weeks, until February 24, 2011, to file a response to the Motion to Dismiss. Plaintiff never filed a response to the Motion to Dismiss, filing an Amended Complaint instead.

[4]Citations to "Am. Compl." refer to the plaintiff's proposed Amended Complaint, dated 2011.

27, 2010, he was the victim of an assault by some individuals, during which he was "hit with sock with a lock in it"and had to receive five stitches in his head. (Compl. at 4; Am. Compl. 3A). He contends that these injuries were the result of the John Doe defendant's[5] "deliberate indifference and intentional misconduct." (Compl. at 5). Specifically, plaintiff claims that he had previously informed the John Doe defendant, Officer White, that he "fear[ed] for his personal health and safety due to serious threats made by the individuals . . . . However[,] defendant (John Doe) ignored plaintiff['s] request." (Compl. at 4-5). Plaintiff further alleges that the officer "left his post with out any authorization" from his superiors, putting plaintiff at great risk. (Id. at 4). In an attachment to the Complaint, plaintiff alleges that Officer White was absent from his post from 9:25 p.m. to 10:20 p.m., returning for the institutional count and then leaving again from 10:25 p.m. until 11:00 p.m. (Compl. Attach.).

In the initial Complaint, plaintiff seeks damages "in an . . . amount sufficient to compensate for the pain and mental anguish suffered by plaintiff . . . in no event less than [$]500,000 together with plaintiff['s] medical and attorney's fees [and] costs, and such additional relief as the court may deem just and proper." (Id. at 5). Plaintiff also seeks judgment against Cameron Lindsay, Warden of the MDC, because Lindsay allegedly "fail[ed] to supervise his employees which [led] to the plaintiff['s] brutal attack" despite plaintiff's warning to Officer White. (Id. at 6).

B. Plaintiff's Proposed Amended Complaint

In his Amended Complaint, plaintiff reiterates the allegation that he was assigned to a residential housing unit B-31-3 North, and that he was the victim of an assault in or about October 27, 2007. (Am. Compl. 3A). The Amended Complaint further alleges that there were "'racial tensions' which existed between the Afro-American inmates and the Puerto Rican inmates" in that Unit, and that he had experienced a "'racially charged' physical altercation" with

---

[5]As noted, the John Doe defendant has now been identified as Officer White. (See Am. Compl. at 3A).

3

several Puerto Rican inmates in the past. (Id.) Plaintiff alleges that he informed Officer White of the prior physical altercation and that he feared for his safety. (Id.) According to the Amended Complaint, plaintiff was assaulted by "these very same Puerto Rican inmates," on October 27, 2007, at which time, he was "beaten on the head . . .with a 'padlock' in a sock," requiring five stitches in his head. (Id.) He contends that these injuries were the result of the Officer White's deliberate indifference and failure to heed plaintiff's requests for "Help." (Id.) Plaintiff reiterates the claim that Officer White "abandoned" his post from 9:25 p.m. to 10:20 p.m., returning for the institutional count and then leaving again from 10:25 p.m. until 11:00 p.m., putting plaintiff at great risk. (Am. Compl. at F).

In the Amended Complaint, plaintiff has added additional allegations regarding the involvement of Cameron Lindsay, Warden of the MDC, in an apparent effort to respond to certain arguments raised by defendants in their earlier Motion to Dismiss. Specifically, plaintiff's Amended Complaint alleges that defendant Lindsay "did in fact personally know that plaintiff's life had been threatened and his health and safety were at risk, thereby violating plaintiff's civil rights." (Id. at 3B). According to plaintiff, Lindsay "personally knew of the racial tensions," and the prior physical altercation involving plaintiff, because Lindsay was "appraised weekly" of the "status" of the MDC through weekly or monthly staff meetings. (Id. at 3B-3C). Plaintiff alleges that at these staff meetings, the Warden and other named defendants discussed, among other things, "'inmate concerns,' 'inmate altercations,' 'racially charged altercations' and 'inmate transfers and movements within the MDC.'" (Id. at 3C). Plaintiff alleges that his transfer to the "SHU" (Special Housing Unit), and the reason for the transfer – namely, the racially charged altercation – were discussed at these staff meetings with the Warden. (Id.) Plaintiff alleges that defendants "knew or should have known" that moving or transferring plaintiff to the housing unit where he had been previously assaulted by Puerto Rican inmates "directly placed plaintiff at serious risk and caused plaintiff to be physically assaulted." (Id. at 3E). He alleges that "defendants" were "subjectively reckless" and "deliberately indifferent" to plaintiff's safety. (Id.)

In the Amended Complaint, plaintiff seeks compensatory and punitive damages against

4

not only Officer White and Warden Lindsay (id. at 3G), but, in addition, plaintiff's Amended Complaint names two new defendants – "A." Stancil, described as "Unit Team Manager," and "Ms." Rita,[6] a Case Manager – along with numerous John Doe defendants. If liberally construed, the Amended Complaint appears to make the same general allegations against these two new defendants as are made against defendant Lindsay. However, the Amended Complaint fails to describe with any detail what role, if any, either of these two individuals played in the incident that forms the basis for the Complaint.

Defendants renew their Motion to Dismiss as to defendant Lindsay and oppose the Motion to Amend, arguing that the allegations against defendant Lindsay are still insufficient to satisfy the standards of Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). With respect to the claims against the two other newly named Unit Team and Case Managers, defendants argue that plaintiff's claims are time-barred, and, therefore, any amendments seeking to add them would be futile.

Accordingly, having reviewed the Complaint and the Amended Complaint and considered the defendants' papers seeking to dismiss the Complaint and in opposition to the Amended Complaint, the Court respectfully recommends: 1) that plaintiff's claims against defendant Lindsay be dismissed in their entirety; and 2) that the motion to amend the Complaint insofar as it seeks to allege claims against Lindsay, Reeder, and Stancil be denied for the reasons set forth below.[7]

---

[6]According to defendants, there is no Ms. Rita; there is a Ms. "Reeder" who is a Case Manager at MDC.

[7]The other defendant in this case, Officer K. White, filed an Answer on October 4, 2010, and does not join the Motion to Dismiss. To the extent that the Amended Complaint contains additional factual allegations against defendant White, the Court respectfully recommends that plaintiff's motion be granted.

5

DISCUSSION

I. Defendant's Motion to Dismiss

    A. Legal Standard

    1) Rule 12(b)(6) Standards

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss for "failure to state a claim upon which relief can be granted." "On a Rule 12(b)(6) motion to dismiss a pleading for failure to state a claim, a court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff." Michaels v. City of New York, No. 10 Civ. 2666, 2011 WL 570125, at *3 (S.D.N.Y. Feb. 16, 2011) (citing Global Network Commc'ns v. City of New York, 458 F.3d 150, 154 (2d Cir. 2006)).

A complaint must allege "enough facts to state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ASTI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

However, "when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally . . . ." Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2000)). Construing pleadings liberally "entails, at the very least, a permissive application of the rules governing the form of

pleadings." Id. Courts must also interpret these pleadings "to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006). "This is especially so when the pro se plaintiff alleges that her civil rights have been violated." Sealed Plaintiff v. Sealed Defendant, 537 F.3d at 191.

2) Elements of a *Bivens* Action

In Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). The right of action created in Bivens is the "federal analogue to suits brought against state officials under . . . 42 U.S.C. § 1983." Ashcroft v. Iqbal, 129 S. Ct. at 1948.

Bivens created an implied right of action under the Fourth Amendment, allowing victims of Fourth Amendment violations to bring suit against the individuals who committed the violations. In Carlson v. Green, 446 U.S. 14 (1980), the Supreme Court expanded the holding of Bivens to include private rights of action against federal officials who violate the Cruel and Unusual Punishments Clause of the Eighth Amendment. Id. at 100. The Court "inferred a right of action against individual prison officials where the plaintiff's only alternative was a Federal Tort Claims Act (FTCA) claim against the United States," because "the threat of suit against the United States was insufficient to deter the unconstitutional acts of individuals." Corr. Servs. Corp. v. Malesko, 534 U.S. at 67-68 (citing Carlson v. Green, 446 U.S. at 18-23).

Under the Eighth Amendment, prison officials are prohibited from using excessive force against inmates, Hudson v. McMillian, 503 U.S. 1 (1992), and are required to provide humane conditions to inmates, including "tak[ing] reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citing Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.

7

1998)). The Supreme Court has ruled that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. at 828.

Prison officials violate the Eighth Amendment "only when two requirements are met. First, the deprivation must be sufficiently serious . . . result[ing] in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id.

Second, the prison official "must have a 'sufficiently culpable state of mind.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). In prison conditions cases, that state of mind is "deliberate indifference." Id. at 838; see also Wilson v. Seiter, 501 U.S. at 298. Deliberate indifference has been interpreted as meaning that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Id. Accordingly, "an official's failure to alleviate a significant risk that he should have perceived but did not" is not violative of the Eighth Amendment. Id.

B. Analysis

Defendant Cameron Lindsay moves to dismiss under Rule 12(b)(6) for two reasons: he first argues that pursuant to Bivens, "supervisory liability is not a cognizable theory of liability." (Def.'s Mem.[8] at 1). Second, defendant contends that "plaintiff has not alleged that Lindsay possessed the requisite mindset in connection with the alleged constitutional violation." (Id.)

---

[8]Citations to "Def.'s Mem." refer to Defendant's Memorandum in Support of Defendant Cameron Lindsay's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), which was filed on July 26, 2010.

8

Although the Court concludes that defendant's first argument is sufficient to merit dismissal of the claims in the initial Complaint, the Court addresses each argument in turn.

1) Supervisory Liability

Under 42 U.S.C. § 1983, as well as Bivens, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S. Ct. at 1948 (citing Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006)). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." Id. (emphasis added). Courts have refused to recognize supervisory liability in the context of Bivens actions because such suits are intended to discourage federal officials from violating the Constitution, and "the threat of suit against an individual's employer is not the kind of deterrence contemplated by Bivens." Corr. Servs. Corp. v. Malesko, 534 U.S. at 70.

Defendant Cameron Lindsay was, at the time of the events complained of by plaintiff, Warden of the MDC. Plaintiff's only allegation in the initial Complaint regarding defendant Lindsay is that he "fail[ed] to supervise his employees which lad [*sic*] to the plaintiff['s] brutal attack." (Compl. at 6). The Complaint contains no other allegations regarding defendant Lindsay's conduct and therefore only appears to allege that defendant should be held liable under a theory of supervisory liability. Since supervisory liability is not recognized in Bivens actions, plaintiff has failed to state a claim on which relief can be granted.

Accordingly, the Court respectfully recommends that the Complaint be dismissed as to defendant Cameron Lindsay.

2) <u>Deliberate Indifference</u>

Defendant also contends that in <u>Bivens</u> actions brought under the Eighth Amendment,[9] plaintiffs must allege that "the charged official . . . act[ed] with a sufficiently culpable state of mind." (Def.'s Mem. at 7 (quoting <u>Salahuddin v. Goord</u>, 467 F.3d 263, 280 (2d Cir. 2006)). This state of mind is deliberate indifference, which requires actual knowledge of conditions giving rise to a substantial risk of harm. (<u>See</u> discussion <u>supra</u> at 8).

Defendant Lindsay's argument regarding supervisory liability is therefore closely related to his contention that he lacked "the requisite mindset"to be held liable under <u>Bivens</u>. <u>Bivens</u> does not allow for supervisory liability because the very creation of <u>Bivens</u> liability was meant to deter individual federal officials from violating constitutional rights. See <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. at 70-71 (holding that "[t]he purpose of <u>Bivens</u> is to deter individual federal officers from committing constitutional violations"); <u>see also</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 485 (1994) (holding that "the purpose of <u>Bivens</u> is to deter *the officer*"). By requiring actual awareness of the conditions that violate the Eighth Amendment, the Supreme Court remained faithful to the deterrence principles enunciated in <u>Bivens</u> and its progeny.

As defendant notes, "[p]laintiff never alleges that Lindsay was aware of a substantial risk of harm to plaintiff." (Def.'s Mem. at 7). Indeed, plaintiff's only mention of Lindsay comes in the "Attachment" to his Complaint, where he states that "Defendent [*sic*] (Cameron Lindsay) fail[ed] to supervise his employees which lad [*sic*] to the plaintiff['s] brutal attack[;] [defendant] (John Doe) was advise[d] of the matter and should be held accountable for his action." (Compl.

---

[9]Defendant correctly notes that "[t]echnically, a federal inmate detained pre-conviction properly asserts his claim under the Due Process Clause of the Fifth Amendment," but "this is an academic point because this Circuit has long applied the same standards whether the deliberate indifference claim is brought under the Eighth or the Fifth Amendment." (Def.'s Mem. at 5 n.2 (citing <u>Cuoco v. Mortisugu</u>, 222 F.3d 99, 106 (2d Cir. 2000)). Although it is unclear from the papers submitted in connection with this motion, it appears that plaintiff's claim arose at a time when he was a pre-trial detainee. However, since the Second Circuit applies the same principles when reviewing <u>Bivens</u> actions brought under the Fifth Amendment as it does when reviewing such cases brought under the Eighth Amendment, plaintiff's status as either a pre-trial detainee or post-conviction inmate is immaterial.

at 6). Even construing the Complaint liberally (see discussion supra at 4), the Court cannot discern any allegation that defendant Lindsay was ever actually informed, either by another prison official or by plaintiff himself, that plaintiff was in any danger or even that defendant Lindsay was aware of the other officer's conduct. Plaintiff has therefore failed to allege that defendant had knowledge of the dangerous conditions, a necessary element of a prison-conditions action under Bivens.

Thus, the Court respectfully recommends that the claims in the initial Complaint pertaining to defendant Lindsay be dismissed.

## II. Plaintiff's Motion to Amend

In moving to amend the Complaint, plaintiff has included additional allegations regarding defendant Lindsay's knowledge and alleged participation in the constitutional violations of Office White. Defendants argue that plaintiff's new claims against defendant Lindsay suffer from "the same fatal flaw as the original complaint," in that the sole basis for a claim against Lindsay is that he failed to supervise his employees and thus failed to prevent the assault. (Defs.' Mem. at 2). Plaintiff also seeks to add claims against two new defendants, Stancil and Reeder, along with 50 John and Jane Does.

### A. Legal Standard

As a general matter, Rule 15(a) of the Federal Rules of Civil Procedure provides that one amendment as of right may be to a pleading made within 21 days after serving it. Once a response to a complaint has been filed, however, a party may amend the pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). After a response has been filed, the Rule provides that "[t]he court should freely give leave when justice so requires." Id. This directive has been liberally construed. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 283 (2d Cir.), cert.

denied, 531 U.S. 1035 (2000); Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (noting that "[t]he stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim").

The decision whether to grant a party's motion to file an amended pleading lies within the discretion of the trial court. See Foman v. Davis, 371 U.S. at 182-83; see also Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citations omitted); In re Agent Orange, 220 F.R.D. 22, 24 (E.D.N.Y. 2004). In this regard, an amendment may be denied for a variety of reasons, "including undue delay, bad faith, undue prejudice to the opposing party, . . . futility," or where the amendment is "'unlikely to be productive.'" In re Agent Orange, 220 F.R.D. at 24 (citing cases and quoting Ruffalo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)); see also Foman v. Davis, 371 U.S. at 182; SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 345 (2d Cir. 2004); Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (opining that the "party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial") (citation omitted).

To determine whether an amendment would cause undue prejudice, courts consider whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Id. (citing cases). However, "[m]ere delay," without a showing of bad faith or prejudice, is not sufficient grounds for a court to deny leave to amend. See Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) (quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see also United States v. Continental Ill. Nat'l Bank & Trust Co. of Chicago, 889 F.2d 1248, 1254-55 (2d Cir. 1989). A court may deny leave to amend where there has been "inordinate delay" without a "satisfactory explanation" offered and prejudice to the non-moving party is shown. See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 152 F.R.D. 18, 29 (S.D.N.Y. 1993). The party who wishes to amend has the burden to provide a satisfactory

explanation for the delay. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990).

Defendants argue that the amendment, insofar as it brings claims against defendants Lindsay, Reeder, and Stancil, is futile in this case and should be denied. An amendment to a pleading is futile when "a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Barrett v. United States Banknote Corp., 806 F. Supp. 1094, 1098 (S.D.N.Y. 1992). See also Ricciuti v. New York City Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991) (stating that a district court can deny an amendment if it "does not state a claim upon which relief can be granted").

In deciding the motion to amend, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Koppel v. 4987 Corp., 167 F.3d 125, 128 (2d Cir. 1999); Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). However, not all statements in a complaint should be assumed to be true. In Ashcroft v. Iqbal, 129 S. Ct. at 1949, the Supreme Court proposed a two-pronged approach to evaluate pleadings in the context of a motion to dismiss: first, a court should identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and second, a court should determine whether those well-pleaded facts, which can be assumed to be true, "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. at 1949-50.

In other words, to withstand a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). The heightened pleading standards enunciated in Ashcroft v. Iqbal also apply when evaluating motions to amend. See Bilello v. JPMorgan Chase Retirement Plan, 649 F. Supp. 2d 142, 151-52 (S.D.N.Y. 2009).

Thus, in evaluating plaintiff's Amended Complaint, the Court must first determine if the complaint alleges "a claim that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. at 570, meaning that it must plead enough factual content so that the court is able to draw the "reasonable inference that the defendant is liable for the conduct alleged." Ashcroft v. Iqbal, 129

S. Ct. at 1949.

Again, because the plaintiff is proceeding pro se, the Court must construe the amended pleadings liberally, Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2000)), interpreting the pleadings "to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006).

B. Analysis

1) Amendment of Claims Against Lindsay

In analyzing plaintiff's motion to amend insofar as it relates to defendant Lindsay, the Court must first determine if the amended pleadings, liberally construed, allege sufficient facts to state a plausible claim that defendant Lindsay, "*through [his] own individual actions,* . . . *violated the Constitution.*" Ashcroft v. Iqbal, 129 S. Ct. at 1948 (citing Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006)) (emphasis added). While defendant Lindsay, as Warden of the MDC, had a duty under the Eighth Amendment to protect plaintiff from violence at the hands of other prisoners, Farmer v. Brennan, 511 U.S. at 833, there must be factual allegations demonstrating that defendant Lindsay was aware of facts from which it could be inferred that there was a substantial risk of harm to plaintiff, and that the defendant drew the necessary inference. Id. at 834. Plaintiff's initial Complaint was deficient in that it failed to allege facts showing that the Warden had "'a sufficiently culpable state of mind.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). Thus, unless the Amended Complaint provides additional allegations regarding defendant Lindsay's state of mind and own individual actions, the claims against Lindsay would still be insufficient and the amendment futile.

In contending that plaintiff's Amended Complaint is still insufficient, defendants point to plaintiff's conclusory allegation that defendant Lindsay knew about the plaintiff's assault "before it happened," and that his transfer within the MDC was discussed at the staff meetings.

14

Defendants argue that these "'naked assertions, devoid of further factual enhancements,'" do not meet the pleading standards of Rule 8. (Defs.' Mem. at 9 (quoting Iqbal, 129 S. Ct. at 1949)). Instead, defendants contend that the claim that Lindsay knew about plaintiff's status is "'nothing more than [a] conclusion[]' based on general MDC procedures." (Id. at 10 (quoting Iqbal, 129 S. Ct. at 1950)).

Here, plaintiff only alleges that Lindsay knew about the prior altercation between plaintiff and the other inmates but does not explain how the Warden learned of this except through speculation that it was discussed at the staff meetings. There is nothing in the Amended Complaint to suggest that plaintiff's particular situation was noteworthy as compared to other racial tension in the MDC or that there were any facts to support the allegation that Lindsay knew or should have known about the situation before the altercation occurred. Plaintiff claims to have spoken directly about his concerns only to Officer White, and plaintiff's own allegations suggest that it was "possible" that White did not attend the staff meetings. Thus, there is no factual support alleged for the claim that Lindsay knew about the risk to plaintiff. Similarly, plaintiff's allegations about Lindsay's state of mind, drawn from Lindsay's alleged knowledge of the situation, are merely conclusory allegations, unsupported by facts.

Even if the allegations were sufficient to meet the requirements of Iqbal and Twombly, plaintiff has still failed to sufficiently plead that Lindsay's own actions violated the Constitution. "It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional violations is a prerequisite to an award of damages under § 1983." Colon, 58 F.3d 865, 873 (2d Cir. 1995); see also Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006) (holding that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution"); Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (holding that "[p]roof of an individual's personal involvement in the alleged wrong, is, of course, a prerequisite to his liability on a claim for damages under § 1983"). Here, there are no facts alleged that would

suggest how Lindsay was otherwise personally involved in the events except for the fact that he was the Warden.

Accordingly, the Court respectfully recommends that the plaintiff's motion to amend, insofar as it relates to defendant Lindsay, be denied.

2) <u>Amendment to Add New Defendants</u>

Plaintiff also seeks to add claims against defendants Stancil and Reeder, along with 50 John and Jane Does. Neither of these individually named defendants was included in the original Complaint. Since the altercation allegedly took place on October 27, 2007, and plaintiff sought to amend his Complaint on February 28, 2011, the three-year statute of limitations applicable to this <u>Bivens</u> action[10] has expired. Thus, the claims are time barred unless they relate back to the date of the original complaint.

Defendants argue that the claims against the new defendants do not relate back to the filing of the original Complaint because plaintiff failed to identify these officers at all in his Complaint. Under Federal Rule of Civil Procedure 15(c), an amendment relates back to the original complaint when:

> (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). With respect to Rule 15(c)(1)(C)(ii), however, the Second Circuit has

---

[10] The statute of limitations that applies to a <u>Bivens</u> action in New York is three years. See <u>Owen v. Okure</u>, 488 U.S. 235, 251 (1985); <u>Tapia -Ortiz v. United States</u>, 171 F.3d 150, 151 (2d Cir. 1999).

made it clear that "lack of knowledge does not constitute a 'mistake' for relation back purposes." Hickey v. City of New York, No. 01-CV-6506, 2004 WL 736896, at *3 (S.D.N.Y. Apr. 5, 2004); see also Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995) (holding that "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly added defendants were not named originally because the plaintiff did not know their identities"); Tapia-Ortiz v. United States, 171 F.3d at 152 (holding that plaintiff's Bivens claim was extinguished where he delayed for over two years to identify the appropriate defendants). If plaintiff has failed to identify a defendant altogether, not just misnamed or misidentified that individual, then relation back does not apply and the amendment should be disallowed. Steiner, 920 F. Supp. at 341.

In this case, neither defendant was put on notice at the time of the initial complaint that they would be named as defendants and subject to potential liability. There was no mention in the original complaint of either the Unit Team Manager or Case Manager playing any role in connection with the incident. Thus, even if plaintiff did not know their names at the time of the initial filing, he could have described them by function or at the very least indicated that there were other supervisory individuals apart from the Warden who plaintiff alleges were involved. To add these individuals now, almost a year after the expiration of the statute of limitations, would be highly prejudicial. See Grullon v. Reid, No. 97 CV 9616, 1999 WL 436457 at *5 (S.D.N.Y. June 24, 1999). Moreover, as noted above, given the absence of any specific allegations as to the conduct of either of these individuals, the claims against them are subject to dismissal in any event for failing to comply with the pleading requirements of Iqbal and Twombly.

## CONCLUSION

Having considered the plaintiff's motion to amend and defendants' opposition papers, the Court respectfully recommends that defendant's motion to dismiss be granted. The Court further

recommends that plaintiff's motion to amend be granted only insofar that it adds specific factual allegations against defendant White; the motion should be denied insofar as the Amended Complaint seeks to bring claims against defendants Lindsay, Stancil and Reeder.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing ("ECF") system or by mail. Defendant is directed to serve a copy of this Report and Recommendation on plaintiff. Defendant must file an affidavit of service within seven days.

**SO ORDERED.**
Dated: Brooklyn, New York
June 3, 2011

Cheryl L. Pollak
United States Magistrate Judge